# No. 23-1091

# In the United States Court of Appeals
# For the Seventh Judicial Circuit

| | | |
|---|---|---|
| GARY HICKS, | ) | Appeal from the United States |
| | ) | District Court for the Central |
| Plaintiff-Appellant, | ) | District of Illinois, Springfield |
| | ) | Division |
| v. | ) | |
| | ) | Case No. 20-cv-3099 |
| ILLINOIS DEPARTMENT OF | ) | |
| CORRECTIONS, Et. Al., | ) | Hon. Sue E. Myerscough, |
| | ) | Judge Presiding |
| Defendants-Appellees. | ) | |

# Reply Brief of the Appellant

**ORAL ARGUMENT REQUESTED**

**JOHN A. BAKER**
Bar #: 6244334
Baker, Baker & Krajewski, LLC
415 South Seventh Street
Springfield, Illinois  62701
Telephone:  (217) 522-3445
Facsimile:  (217) 522-8234
Email:  jab@bbklegal.com

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................2

ARGUMENT .......................................................................................................3

    A.   In performing *Pickering* balancing, this Court cannot speculate about legitimate justifications for discipline. The Individual Defendants are manufacturing *ex post facto* justifications for their decision to discipline Hicks. ...............................................................................................3

        1.   The fact that they had to conduct an investigation was not material to their decision-making. ...............................................................7

        2.   The *Tay Tay* decision..................................................................8

        3.   Emily Hoerner article .................................................................11

        4.   Hicks' supervisory role ..............................................................12

CONCLUSION ..................................................................................................14

COMPLIANCE WITH TYPE LIMITATIONS .......................................................15

CERTIFICATE OF SERVICE ...............................................................................16

# TABLE OF AUTHORITIES

**Cases**

*Bennett v. Metropolitan Government of Nashville & Davidson County, Tennessee*,
977 F.3d 530 (6th Cir. 2020) ...............................................................................5, 6, 7

*Durham v. Jones*,
737 F.3d 291, 302 (4th Cir. 2013) ..................................................................................6

*Grutzmacher v. Howard County*,
851 F.2d 332 (4th Cir. 2017) ..........................................................................................7

*Gustafson v. Jones*,
290 F.3d 895, 909 (7th Cir. 2002) ..................................................................................3

*McKennon v. Nashville Banner Pub. Co.*,
513 U.S. 352, 115 S. Ct. 879 (1995)........................................................................10, 11

*Schneiter v. Carr*, 2022 WL 1773484 (W.D. Wis. 2022) ................................................13

*Tay Tay v. Dennison*, 457 F.Supp.3d 657 (S.D. Ill. 2020) ..........................................8, 11

## ARGUMENT

**A. In performing *Pickering* balancing, this Court cannot speculate about legitimate justifications for discipline. The Individual Defendants are manufacturing *ex post facto* justifications for their decision to discipline Hicks.**

In their brief, the Individual Defendants outline why disciplining Hicks might have been a reasonable course of action. This, of course, has little resemblance to why they took the actions they took. In *Gustafson v. Jones*, 290 F.3d 895, 909 (7th Cir. 2002), this Court explained that the *Pickering* balancing "is not an exercise in judicial speculation." The Court pointed to *Connick* and explained how the Supreme Court had looked at the actual justification that was offered during discovery and looked to see if that was sufficient to carry the burden of restricting an employee's exercise of his free speech rights. *Id.* This Court made it clear that in engaging in the *Pickering* balancing, a court is not "entitled to speculate as to what the employer might have considered the facts to be and what concerns about operational efficiencies it might have had, once the record shows what those concerns really were." *Id.* The Court concluded that "First Amendment rights cannot be trampled based on hypothetical concerns that a governmental employer never expressed." *Id.* at 910.

In their original motion for summary judgment, the Individual Defendants never provided much of a reason why they ultimately disciplined Hicks. The argument was that after the Hoerner article, Jeffreys was "concerned that employees were treating people in custody and other employees in a derogatory manner on the topics of religion, race, and sexuality." Doc. 35 at 13. After reviewing Hicks' posts,

3

Jeffreys and Eilers decided to place Hicks on administrative leave to "investigate those concerns." *Id*. It was then determined by the investigation that "the posts reflected negatively on the Department and its overall mission." *Id*.[1] Like the investigative report, the summary judgment motion shed no light on how, exactly, the posts reflected negatively on the DOC.

It was entirely appropriate for there to be an investigation into Hicks' posts. The problem is that the Individual Defendants are not basing their current justifications on the ultimate results of the investigation, but instead are manufacturing what could potentially be legitimate justifications. The investigation merely established what Hicks had posted (which differed from what was suggested by Hoerner). The stated reason for the investigation was to assess whether Hicks was treating people in custody differently because of their race, religion, and sexual orientation/status. There was nothing that suggested Hicks had ever treated anyone poorly for any reason, much less for an unlawful reason. There wasn't even any evidence that anyone at the prison had any clue what Hicks had said. Warden Neese, who would be in a position to know if Hicks' statements caused any discord at the prison, stated she had no idea he had said anything until she was notified of the investigation. Doc. 34-1 at 127.

---

[1] In their statement of fact section, the Defendants never really explain what justified their decision to suspend Hicks. Doc. 35 at 3-61. Those facts never claim that Hicks' actions caused problems or that they thought they reasonably thought they might cause problems at the institution.

4

The investigative report outlines that Hicks acknowledged authoring the postings. App. at 39-40. Nothing in that report suggests that there were concerns about Hicks' statements that could impact the DOC's operations. *Id.* Likewise, there is nothing suggesting that Hicks' statements were problematic because it could create litigation. *Id.* Rather, it simply concluded that while Hicks' statements were his personal beliefs about religion and politics, "the posts do reflect negatively on the department as well as the departments (sic) overall mission." *Id.* Jeffreys was asked specifically how during discovery and provided a generic answer. Appellant brief at 23-24.[2]

The Individual Defendants argue that *Bennett v. Metropolitan Government of Nashville & Davidson County, Tennessee*, 977 F.3d 530 (6th Cir. 2020), is analogous. *Bennett* is helpful, however, not for the reasons argued by the Individual Defendants. In *Bennett,* the plaintiff was employed as an Emergency Telecommunicator. On election night 2016, she posted favorably about the election of Donald Trump. *Id.* at 533. As her postings progressed, she made some racial slurs about certain minorities. *Id.*[3] The next day, co-workers complained to management about the posts. *Id.* at 534. Those complaints snowballed, and there were also complaints received from citizens about the posts. *Id.* When she spoke with the

---

[2] In their brief, the Individual Defendants misstate the investigations conclusions. Appellee brief at 22. While the report references the media report, the conclusion in no way indicates that the DOC was concerned about "negative publicity." App. 39-40.

[3] The Sixth Circuit explained that the word used "evokes a history of racial violence, brutality, and subordination." *Id.* at 543. One concurring opinion described it as "perhaps the most offensive word in the English language." *Id.* at 548.

5

plaintiff, she showed no remorse and felt like she was the victim in the situation. *Id.* at 535.

The Sixth Circuit found that the speech was on a matter of public concern and turned to the *Pickering* balancing. *Bennett* is important because the facts are so different from here. In *Bennett,* the workplace was disrupted, and there were a multitude of complaints from co-workers and citizens. Additionally, the plaintiff was unrepentant and claimed to be the one who was persecuted. In that case, the investigation concluded that the postings had created internal workplace strife and sowed internal discord. There was no such conclusion, and the Individual Defendants have never suggested that they reasonably anticipated it would cause problems. While an employer need not necessarily wait for a fallout before they act, *see Durham v. Jones*, 737 F.3d 291, 302 (4th Cir. 2013), they also can't ignore the fact that there hasn't been any internal backlash and then in litigation reflexively contend they were concerned about internal discord. Hicks' posts were made in March, May, and July. He wasn't disciplined until mid-October. App. 44. The passage of time refutes any suggestion – if one had been made – that it was reasonable to predict that Hicks' statements would create internal disharmony.

*Bennett* is important because it demonstrates that an employer cannot reflexively claim that speech will impact the workplace. The Individual Defendants had no reasonable basis to fear internal discord here, and none of the contemporaneous documentation suggests that they were concerned about any sort of problems.

6

The reliance upon *Grutzmacher v. Howard County*, 851 F.2d 332 (4th Cir. 2017), is even less persuasive than *Bennett*. For starters, the plaintiff in *Grutzmacher* posted about matters related to work while on duty from his office. When instructed to remove the offending posts, he published a screed complaining about the social media policy. This was a case where the comments dealt with issues related to work, where there was insubordination, and where there were implicit threats of violence. He was terminated for several different reasons, including the fact that he was undermining the social media policy he was supposed to be enforcing. *Id.* at 339-340. The disruption he caused violated the authority of the chain of command. *Id.*

### 1. The fact that they had to conduct an investigation was not material to their decision-making.

In their brief, the Individual Defendants argue that the mere fact that an investigation was conducted caused "substantial disruption" to the DOC. Appellee brief at 22. While this point was seemingly never on their mind, they now suggest that precious resources had to be dedicated to the investigation. *Id.* Nothing suggests that conducting an investigation caused any disruption, much less a substantial one. The investigation consisted of looking at the posts and speaking with Hicks about them. No one else even appears to have been interviewed. The investigatory report suggests that Hicks readily admitted to posting his political feelings and did not intend to offend anyone. App. 39-40, 45. The investigation also demonstrated that the newspaper article that triggered it was inaccurate. App. 45.

More importantly, there is nothing to suggest that any of the Individual Defendants found that they needed to discipline Hicks because the investigation caused a disruption or utilized precious resources. Even if such an argument were advanced, it would be hard to endorse. Governmental employers frequently do internal investigations. Using the mere fact that one had to be conducted to justify discipline would enable a governmental employee to be disciplined anytime a complaint was even made simply because an investigation was conducted.

## 2. The *Tay Tay* decision

In their brief, the Individual Defendants raised Judge Rosenstengel's opinion in *Tay Tay v. Dennison*, 457 F.Supp.3d 657 (S.D. Ill. 2020). Appellee brief at 10, 24. While not explaining why, the district court ultimately did not consider that holding. App. at 26. It is likely that the court recognized that the *Tay Tay* determination became a convenient justification that didn't really impact the decision to suspend Hicks but was being used after the fact to justify it further.

The Individual Defendants first introduced the *Tay Tay* decision in support of their motion for summary judgment. Doc. 35 at 9, 14. In their statement of fact, they never suggested that the *Tay Tay* litigation – or any litigation – justified their decision to place Hicks on leave or to suspend him. Doc. 35 at 3-9. Instead, their fact section simply mentioned the decision. *Id*. When the *Tay Tay* decision was referenced, Hicks filed a motion to strike it. Doc. 37. While the district court was certainly free to take judicial notice of the decision, there was absolutely nothing in the record that indicated that Judge Rosenstengel's opinion in *Tay Tay* could have

8

possibly motivated the decision to suspend Hicks. In his motion to strike, Hicks outlined the efforts he had taken during discovery to get an understanding of every reason that Hicks was disciplined. Doc. 37 at ¶ 6-14.

There is zero evidence that the *Tay Tay* decision was something relied upon in making the decision to suspend Hicks. Before the district court, the Individual Defendants argued that Hicks' social media posts were criticized in *Tay Tay* and subjected the DOC to scrutiny. Doc. 35 at 11-12. This statement is not accurate because there is nothing to indicate that Judge Rosenstengel saw, much less relied upon, any statements that Hicks had made. Doc. 40 at 18-19.[4] The 61-page *Tay Tay* opinion dealt with a multitude of issues addressing the DOC's handling of transgender inmates. Ultimately, only about ½ of a page is dedicated to "Facebook posts." Doc. 35-20 at 21-22.[5] In criticizing those posts, Judge Rosenstegel makes it clear that those posts were on a specific Facebook forum called "Behind the Walls – Illinois Department of Corrections." Doc. 35-20 at 22. Hicks never posted on that site. Doc. 40-1 at ¶ 5.[6] Nothing in Hicks' comments relates to any inmate, much less to a transgender inmate. Hicks' statements had nothing to do with gender or sexual

---

[4] In responding to the statement of facts, Hicks provided a detailed analysis of Judge Rosenstegel's opinion and what she actually relied upon. *See* Doc. 40 at 18-19, specifically ¶ 59-61.

[5] The lawsuit questioned the DOC's housing of transgender inmates and the complaint never addressed concerns about internet postings. Doc. 35-4.

[6] The opinion doesn't really detail the nature of the postings; however, the transcript of the preliminary injunction hearing does explain what was said. The postings were very clearly referencing a specific transgender inmate and making statements that placed the specific inmate "in a very negative light." Doc. 40-2.

9

orientation. In other words, the posts Judge Rosenstengel reviewed dealt with a specific DOC inmate, were clearly linked to the DOC, and were critical of a specific individual.

On appeal, the Individual Defendants seem to acknowledge that Judge Rosenstengel's opinion couldn't have motivated their decision because it wasn't issued until May 1, 2020. Doc. 20-35. It is axiomatic that information that an employer learned after a decision could not have been used to make that decision. *McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 360, 115 S. Ct. 879, 885, 130 L. Ed. 2d 852 (1995). Nonetheless, they contend that it is important because it demonstrates that their concerns were not unreasonable. Appellee brief at 23.

The Individual Defendants also contend that they had "reasonable concerns that Hicks's Facebook posts could further impair its operations by increasing the Department's exposure to public scrutiny and lawsuits." Appellee brief at 23. There is no citation to them making this particular claim in the record. Jeffreys' only mention of litigation in his deposition was in response to a question about an email that he sent out. Doc. 34-1 at 82-85. That particular email outlined his expectations for DOC members regarding social media. Doc. 34-6 at 14. He stated that he sent it out because "there was some information about staff posting things derogatory about the people we have in custody." Doc. 34-1 at 83. He went on to explain that he understood that "staff were referring to specific inmates in a racially derogatory fashion." Doc. 34-1 at 85. If this was happening, it was unrelated to anything that Hicks said. The Individual Defendants are conflating the testimony regarding why

10

Jeffreys sent out a memo with his justification for disciplining Hicks. He never offered a concern about litigation as a reason for disciplining Hicks.

Judge Rosenstengel's opinion and the transcript from the hearing both point out instances where the DOC likely would have a legitimate interest in restricting the off-duty speech of its employees. For example, if an employee discusses a specific inmate, the DOC would certainly be justified in disciplining an employee. That is what it seems happened in the *Tay Tay* case. The Individual Defendants are attempting to conflate such improper comments with the comments that Hicks made.

### 3. Emily Hoerner article

The Individual Defendants also rely upon an objectively inaccurate article written by *Injustice Watch* reporter Emily Hoerner. Doc. 35-3. While Hicks addressed this issue in his initial brief, there are a couple of points that warrant a short reply. Appellant brief at 21.

The way that the article is written it certainly has the possibility of placing the DOC in a bad light. The reason for that is because it inaccurately claims that Hicks made homophobic slurs, refused to let a transgender inmate out of her cell and she was beaten up as a result, and used other inappropriate language towards the inmate. The article then goes on to mischaracterize Hicks' Facebook posts. Doc. 35-3, at 3.[7]

---

[7] Nonetheless, the DOC can't point to one person who in any fashion complained about Hicks or his Facebook posts after the article was published.

11

The DOC was warranted in conducting an investigation when they heard from Hoerner. That investigation revealed much of what she wrote was wrong and conflated Hicks with a different individual employed by the DOC at a different prison. That having been said, there is nothing in the record that supports the contention that Hicks' was disciplined because of the article. When Jeffreys was asked to explain how Hicks' postings impacted the operations of the DOC, he never mentioned the article. Doc. 34-6 at Interrogatory 1.

The article does point out certain statements made by others that the DOC would have a legitimate reason to restrict. For example, there is a meme in the article where a correctional employee has a wrestler slamming another wrestler to the ground. The comment states, "I assisted the inmate to the Floor! Corrections 101." Doc. 35-3 at 2. This is the sort of statement that puts the DOC in a bad light because it suggests that guards are advocating for physical violence directed at inmates. Such a statement would certainly run counter to the DOC's mission and would justify disciplinary action.

### 4. Hicks' supervisory role

The Individual Defendants argue that Hicks' role as a supervisory employee aggravates his actions. In many cases, this Court and others have pointed out that supervisory employees are held to a higher standard. Appellee brief at 28, 31-32. The problem with the argument is that the cases they rely upon dealt with individuals who had high-ranking roles with their agencies. Hicks did not.

Hicks was a sergeant, Doc. 34-1 at 120, Doc. 34-8 at 11, not a "highly placed supervisor." Warden Neese explained Hicks' job responsibilities as overseeing the staff and offenders in his area. *Id.* She described it as a mid-level supervisory position at the facility. *Id.* at 121.

The Individual Defendants rely upon *Schneiter v. Carr*, 2022 WL 1773484 (W.D. Wis. 2022), a case that has been argued before this Court. The district court relied heavily upon the fact that the plaintiff was a high-ranking supervisor who, amongst other things, was responsible for enforcing civil rights laws.[8]

Additionally, the Individual Defendants can point to nothing in the record that would show that they considered Hicks' role as a supervisor when they disciplined him.

---

[8] The memes in *Schneiter* were also much more offensive than what Hicks posted and were not tied to the ongoing national political debate.

## CONCLUSION

The argument advanced by the Individual Defendants outlines some plausible justifications for why disciplining Hicks might have been appropriate. While plausible, they were not the justifications they actually advanced for the decision. They have made it clear that anytime someone is offended by a comment, a DOC employee is subject to discipline. Such a standard curtails employee speech in a way that offends the First Amendment. For the reasons that have been advanced both here and in Hicks' initial brief, the judgment of the district court should be reversed, and this matter remanded with directions that judgment be entered in favor of Hicks. At the very least, it needs to be remanded for a trial so that a jury can properly decide what actually motivated the Individual Defendants' decision in this case.

GARY HICKS
*September 5, 2023*

By: /s/ John A. Baker
　　　His Attorney

John A. Baker
Baker, Baker & Krajewski, LLC
415 South Seventh Street
Springfield, Illinois 62701
T:　(217) 522-3445
F:　(217) 522-8234
E:　jab@bbklegal.com

## COMPLIANCE WITH TYPE LIMITATIONS

    This brief consists of under 3,500 words and is in compliance with Local Rule 32(c).

GARY HICKS
*September 5, 2023*

By: /s/ John A. Baker
     His Attorney

John A. Baker
Baker, Baker & Krajewski, LLC
415 South Seventh Street
Springfield, Illinois 62701
T:    (217) 522-3445
F:    (217) 522-8234
E:    jab@bbklegal.com

## CERTIFICATE OF SERVICE

 The Plaintiff-Appellant, Gary Hicks, hereby certifies that on September 5, 2023, he initially submitted an electronic copy of his reply brief and it was delivered to all counsel of record via this Court's ECF system.

GARY HICKS
*September 5, 2023*

By: <u>/s/ John A. Baker</u>
  His Attorney

John A. Baker
Baker, Baker & Krajewski, LLC
415 South Seventh Street
Springfield, Illinois 62701
T: (217) 522-3445
F: (217) 522-8234
E: jab@bbklegal.com